UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CRAIG BLACKMON, : | |
| : | |
| Petitioner, : | Civ. No. 20-7507 (RK) |
| : | |
| v. : | |
| : | |
| ATTORNEY GENERAL OF THE : | OPINION |
| STATE OF NEW JERSEY, et al., : | |
| : | |
| Respondents. : | |

**KIRSCH, District Judge**

I.   **INTRODUCTION**

Petitioner, Craig Blackmon ("Petitioner" or "Blackmon"), is a state prisoner incarcerated at the Northern State Prison in Newark, New Jersey. He is proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. *See* ECF No. 4. Petitioner challenges the denial of parole and a future eligibility term ("FET") of 120 months in this federal habeas corpus proceeding.

For the following reasons, Petitioner's habeas petition is denied. Additionally, a certificate of appealability shall not issue.

II.   **FACTUAL AND PROCEDURAL BACKGROUND**

The underlying background of Petitioner's state criminal convictions and subsequent denial of parole was discussed by the New Jersey Superior Court, Appellate Division in its opinion affirming the New Jersey State Parole Board's (hereinafter the "Parole Board") denial of Petitioner's parole as follows:

> Blackmon is serving a life sentence with a mandatory minimum term of thirty-two-and-a-half years for murder, aggravated sexual assault, and possession of a weapon for an unlawful purpose. In

1985, Blackmon was under the influence of Phencyclidine, commonly known as PCP, when he restrained, sexually assaulted, beat, and repeatedly stabbed his cousin in her home with her two-year-old son present. The victim's physical injuries were gruesome, including a stab wound that penetrated ten inches into her vagina, a gaping wound to her neck, and fractures of every bone in her neck. After killing his cousin, Blackmon urinated on her body. The victim's child was discovered at the scene of the murder physically unharmed, but covered in his mother's blood.

Blackmon became eligible for parole in 2017. A two-member Board panel denied parole, and referred his case to a three-member Board panel to establish a FET [future eligibility term] that may be in excess of administrative guidelines. The two-member panel based its decision on a number of factors, including the serious nature of the offense, the increasingly serious nature of Blackmon's criminal record based on a prior conviction for possession of a weapon for an unlawful purpose, incarceration on multiple offenses, institutional infractions, insufficient problem solving, and a risk assessment evaluation indicating a moderate risk of recidivism. Regarding his insufficient problem resolution, the panel noted that Blackmon "blames this horrific, brutal and sexual crime on his PCP use. He needs to work on his underlying issues that contributed to this extremely violent crime." The panel also noted mitigating factors, including a minimal criminal offense history, participation in institutional programs specific to behavior, a favorable institutional adjustment, and attempts to enroll in programs to which Blackmon was not admitted. The panel also relied on confidential information in Blackmon's file.

The two-member panel later amended its decision. The panel changed one of the reasons for denial of parole from "serious nature of offense" to "facts and circumstances of offense." In addition, the panel added "offense record is repetitive" as a reason for denial of parole.

A three-member panel subsequently imposed a 120-month FET and issued an eight-page written decision. The three-member panel based its decision on the same aggravating and mitigating factors identified in the amended decision of the two-member panel. The three-member panel found that Blackmon lacked insight into what motivated him to ingest the drugs that led to his violent behavior, did not fully recognize the severity of his acts, and had inadequate introspection into the personality traits that resulted in his crimes. The panel noted that the 120-month FET would result in a projected

> parole eligibility date in March 2024, after reduction for commutation, work, and minimum custody credits.
>
> On appeal to the full Board, Blackmon, in addition to other arguments, contended that the panels misstated his criminal record because his prior charge for possession of a weapon for an unlawful purpose was dismissed after he completed a pretrial intervention program. The Board thereafter amended its records to state Blackmon had no prior criminal conviction. Both the two-member and three-member panels later reaffirmed their decisions after: (1) removing from consideration the aggravating factors of an increasingly serious criminal record and a repetitive criminal record; and (2) replacing the mitigating factor of minimal offense record with no prior offense record.
>
> On September 26, 2018, the full Board issued a written decision affirming the decisions of both panels.

*Blackmon v. New Jersey State Parole Bd.,* No. A-1020-18T2, 2019 WL 5092389, at *1–2 (N.J. Super. Ct. App. Div. Oct. 11, 2019).

Petitioner appealed the Parole Board's decision to the New Jersey Superior Court, Appellate Division. Most relevant to this federal habeas corpus proceeding, Petitioner raised the following claims in that appeal:

1. Petitioner was denied due process during his parole proceedings due to a conflict of interest;

2. Petitioner was denied due process as parole was denied due to retaliation for Petitioner exercising his constitutional rights;

3. Petitioner was denied due process as parole was denied due to speculation; and

4. The imposition of an extraordinary FET was not supported by credible evidence.

*Blackmon,* 2019 WL 5092389, at *2.

The Appellate Division denied all of Petitioner's claims. *See id.* at *2-3. Petitioner appealed the Appellate Division's decision to the New Jersey Supreme Court. The New Jersey

Supreme Court denied certification without discussion. *See Blackmon v. New Jersey State Parole Bd.*, 226 A.3d 498 (N.J. 2020).

Subsequently, Petitioner filed this federal habeas corpus action. Petitioner raises the following claims in his federal habeas petition:

1. Petitioner was denied due process when parole was denied due to retaliation for Petitioner exercising his constitutional rights to appeal his sentence ("Claim I");

2. Petitioner was denied due process when the Parole Board relied on speculative and inaccurate predicates in denying Petitioner parole ("Claim II");

3. Petitioner was denied due process when his right to a neutral and detached Parole Board was not protected ("Claim III"); and

4. Petitioner was denied due process when the Parole Board imposed a FET beyond the ordinary term ("Claim IV").

*See* ECF No. 4 at 7-12.

Respondents filed a response in opposition to Petitioner's habeas petition. *See* ECF No. 11. Respondents assert that Petitioner was afforded all due process owed. Petitioner subsequently filed a reply in support of his habeas petition. *See* ECF No. 16.

### III.   LEGAL STANDARD

An application for writ of habeas corpus by a person in custody under judgment of a state court can only be granted for violations of the Constitution or laws or treaties of the United States. *See Engle v. Isaac*, 456 U.S. 107, 119 (1982); *see also Mason v. Myers*, 208 F.3d 414, 415 n.1 (3d Cir. 2000) (citing 28 U.S.C. § 2254). Petitioner filed this petition for writ of habeas corpus after April 24, 1996, thus, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. 104-132, 110 Stat. 1214 (Apr. 24, 1996), applies. *See Lindh v. Murphy*, 521 U.S. 320, 326

(1997). Under AEDPA, federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court. *See* 28 U.S.C. § 2254(d).

As a threshold matter, a court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003) (quoting 28 U.S.C. § 2254(d)(1)). "'[C]learly established federal law' under § 2254(d)(1) is the governing legal principle set forth by the Supreme Court at the time the state court renders its decision." *Id.* (citations omitted). A federal habeas court making an unreasonable application inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *See Williams v. Taylor*, 529 U.S. 362, 409 (2000). Thus, "a federal court may not issue a writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. Furthermore, a federal court must accord a presumption of correctness to a state court's factual findings, which a petitioner can rebut only by clear and convincing evidence. *See* 28 U.S.C. § 2254(e); *see also Rice v. Collins*, 546 U.S. 333, 339 (2006) (petitioner bears the burden of rebutting presumption by clear and convincing evidence); *Duncan v. Morton*, 256 F.3d 189, 196 (3d Cir. 2001) (factual determinations of state trial and appellate courts are presumed to be correct). In determining whether a state court decision was based on an unreasonable determination of the facts:

> federal court review considers only whether the state court adjudication "resulted in a decision that was based on an

5

> unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The statute directs the federal court to *presume* that all determinations of fact made by the state court are correct and requires that the petitioner present "clear and convincing evidence" to rebut this presumption.

*Hunterson v. DiSabato*, 308 F.3d 236, 245–46 (3d Cir. 2002) (citing 28 U.S.C. § 2254(e)(1); *Stevens v. Delaware Corr. Ctr.*, 295 F.3d 361, 368 (3d Cir. 2002)). AEDPA's standard under § 2254(d) is a "difficult" test to meet and is a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

In applying AEDPA's standards, the relevant state court decision that is appropriate for federal habeas corpus review is the last reasoned state court decision. *See Bond v. Beard*, 539 F.3d 256, 289-90 (3d Cir. 2008). Furthermore, "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991); *see also Wilson v. Sellers*, 584 U.S. 122, 125 (2018); *Rambo v. Adm'r East Jersey State Prison*, 762 F. App'x 105, 107 (3d Cir. 2019) (noting the applicability of *Ylst*'s "look through" doctrine). These deferential standards apply "even where there has been a summary denial" by the state court. *See Cullen*, 563 U.S. at 187.

## IV.   DISCUSSION

### A.   Claims I, II & IV

Claims I and II challenge the underlying decision to deny Petitioner parole by the Parole Board. Claim I argues that the Parole Board used an impermissible factor to deny him parole because it relied on Petitioner's attempt to appeal his sentence in its denial. Claim II asserts that

6

his parole denial was based on speculation by the Parole Board in arriving at its conclusions on certain factors.

Claim IV argues that Petitioner's 120-month FET term was improper. Under New Jersey law, when an inmate serving a sentence for murder is denied parole, the standard FET is twenty-seven months. *See* N.J. Admin. Code § 10A:71-3.21(a)(1). However, a three-person panel may establish a FET more than that period if the standard FET is determined to be inappropriate due to the inmate's lack of satisfactory progress in reducing the likelihood of criminal behavior. *See* N.J. Admin. Code § 10A:71-3.21(d).

Respondents argue that Petitioner received the due process owed to him which included notice, an opportunity to be heard and a statement of reasons for denying parole and imposing a FET of 120 months. *See* ECF No. 11-1 at 18. Respondents expressly rely on *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1 (1979) to support their position that Petitioner's due process rights were not violated. In reply, Petitioner argues that Respondents' reliance on *Greenholtz* is somewhat misplaced because his claim also relates to his *substantive* due process rights. *See* ECF No. 16 at 4-5. Petitioner cites to *Block v. Porter*, 631 F.2d 233, 235 (3d Cir. 1980) in support of his proposition that *Greenholtz* does not block the ability of courts reviewing the substance of parole decisions, as opposed to the adequacy of procedures, to determine whether a parole board arbitrarily exercised its authority. Because Claims I, II and IV potentially implicate both *procedural* and *substantive* due process, the Court will analyze these three claims under both constitutional protections.

*Greentholtz* noted that where a State creates a liberty interest, a prisoner receives adequate due process when he is allowed an opportunity to be heard and was provided a statement of reasons why parole was denied. *See Swarthout v. Cooke*, 562 U.S. 216, 220 (2011) (citing *Greenholtz*,

7

442 U.S. at 16). After *Greenholtz*, the United States Supreme Court decided *Swarthout*, 562 U.S. 216. In *Swarthout*, the Supreme Court discussed California's parole system as well as *Greenholtz* and analyzed two state prisoners' habeas challenges to parole denials in which they argued that their due process rights were violated. In reviewing a parole board denial in California, a prisoner could seek judicial review in a state habeas petition. *See id.* at 216. The standard of review as explained by the California Supreme Court was whether "some evidence" supported that the inmate was unsuitable for parole because he is currently dangerous. *See Swarthout*, 562 U.S. at 217. Initially, the Supreme Court stated it had no reason to review the United States Court of Appeals for the Ninth Circuit's holding that California law formed a state created liberty interest in parole. *See id.* at 219. As the liberty interest was a state created one, the Supreme Court explained that *Greenholtz* provides the due process due, namely an opportunity to be heard and a statement of reasons why parole was denied. *See id.* at 220.

This Court is guided by *Greenholtz* and *Swarthout* in analyzing whether the state courts' decision to uphold Petitioner's parole denial was contrary to or an unreasonable application of clearly established Supreme Court precedent. *Swarthout* explained that "[t]here is no right under the Federal Constitution to be conditionally released before the expiration of a valid sentence, and the States are under no duty to offer parole to their prisoners." *Swarthout*, 562 U.S. at 220. "When, however, a State creates a liberty interest, the Due Process Clause requires fair procedures for its vindication — and federal courts will review the application of those constitutionally required procedures. In the context of parole, [the United States Supreme Court has] . . . held that the procedures required are minimal." *Id.* In *Greenholtz*, as previously explained, the United States Supreme Court held that the Due Process Clause requires inmates to be "afford[ed] an opportunity to be heard, and when parole is denied [the Parole Board must] inform[ ] the inmate in what

respects he falls short of qualifying for parole; this affords the process that is due under these circumstances. The Constitution does not require more." 442 U.S. 1, 16 (1979).

New Jersey has established a state-created liberty interest by offering the opportunity for prisoners to receive parole. *See New Jersey Parole Board v. Byrne*, 460 A.2d 103, 111 (N.J. 1983); *see also McGill v. Nogan*, No. 14-6126, 2019 WL 2095601, at *3 (D.N.J. May 7, 2018) (citing *Byrne*, 460 A.2d at 111) ("There is no dispute that New Jersey's parole statute has established certain limited Due Process rights."). There is little doubt that Petitioner received the procedural due process protections he was entitled to. He was afforded an opportunity to be heard, provided notices of decisions, a final decision and ultimately the ability to appeal to the New Jersey Superior Court, Appellate Division and then to the New Jersey Supreme Court. This is what the United States Constitution requires. *See Swarthout*, 562 U.S. at 221.

The Court is mindful though that Petitioner also argues that his *substantive* due process rights were violated by the parole denial and application of a FET of 120 months. Courts have recognized a possible habeas claim when a New Jersey inmate's denial of parole violated his *substantive* due process rights. *See Hunterson*, 308 F.3d at 246 (quoting *Coady v. Vaughn*, 251 F.3d 480, 487 (3d Cir. 2001)); *see also Abdel-Aziz v. Bonds*, No. 16-3600, 2018 WL 4326401, at *4 (D.N.J. Sept. 10, 2018) (citing *Coady*, 251 F.3d at 487). For there to be a substantive due process violation, the level of arbitrariness in the parole denial must involve action that is "conscience shocking." *See Hunterson*, 308 F.3d at 246-47. This is a high threshold for a petitioner to establish. *See Strategic Envtl. Partners, LLC v. Bucco*, 184 F. Supp. 3d 108, 129 (D.N.J. 2016) (citing *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 285 (3d Cir. 2004) (noting the high bar of the "shocks the conscience" test for conduct to rise to the level of a substantive due process violation). In *Block*, the Third Circuit noted some examples where a substantive due

process violation may occur in the context of parole denial, such as where a petitioner was denied parole "on the basis of race, religion or sexual beliefs, or on frivolous criteria with no rational relationship to the purpose of parole such as the color of one's eyes, the school one attended, or the style of one's clothing." 631 F.2d at 236 n.2; *see also Smith v. Holden*, No. 11-288, 2014 WL 4058789, at *3 (D. Del. Aug. 14, 2014) (citing approvingly to *Block*). Further emphasizing the high bar that an inmate such as Petitioner faces in raising a substantive due process claim in this context though, the Third Circuit has expressly noted that, "[w]e have made clear that the federal courts, on habeas review, are not to 'second-guess parole boards,' and the requirements of substantive due process are met if there is some basis for the challenged decision." *Hunterson*, 308 F.3d at 246.

New Jersey law sets forth the factors for a parole board to consider in arriving at its parole decision; they are as follows:

> 1. Commission of an offense while incarcerated.
> 2. Commission of serious disciplinary infractions.
> 3. Nature and pattern of previous convictions.
> 4. Adjustment to previous probation, parole and incarceration.
> 5. Facts and circumstances of the offense.
> 6. Aggravating and mitigating factors surrounding the offense.
> 7. Pattern of less serious disciplinary infractions.
> 8. Participation in institutional programs which could have led to the improvement of problems diagnosed at admission or during incarceration. This includes, but is not limited to, participation in substance abuse programs, academic or vocational education programs, work assignments that provide on-the-job training and individual or group counseling.
> 9. Statements by institutional staff, with supporting documentation, that the inmate is likely to commit a crime if released; that the inmate has failed to cooperate in his or her own rehabilitation; or that there is a reasonable expectation that the inmate will violate conditions of parole.
> 10. Documented pattern or relationships with institutional staff or inmates.
> 11. Documented changes in attitude toward self or others.


> 12. Documentation reflecting personal goals, personal strengths or motivation for law-abiding behavior.
> 13. Mental and emotional health.
> 14. Parole plans and the investigation thereof.
> 15. Status of family or marital relationships at the time of eligibility.
> 16. Availability of community resources or support services for inmates who have a demonstrated need for same.
> 17. Statements by the inmate reflecting on the likelihood that he or she will commit another crime; the failure to cooperate in his or her own rehabilitation; or the reasonable expectation that he or she will violate conditions of parole.
> 18. History of employment, education and military service.
> 19. Family and marital history.
> 20. Statement by the court reflecting the reasons for the sentence imposed.
> 21. Statements or evidence presented by the appropriate prosecutor's office, the Office of the Attorney General, or any other criminal justice agency.
> 22. Statement or testimony of any victim or the nearest relative(s) of a murder/manslaughter victim.
> 23. The results of the objective risk assessment instrument.
> 24. Subsequent growth and increased maturity of the inmate during incarceration.

N.J. Admin. Code § 10A:71-3.11(b). With respect to determining a longer FET, the Board considers these same factors. *See* N.J. Admin Code § 10A:71-3.21(d).

The New Jersey Superior Court, Appellate Division summarily found that the Parole Board's decision was supported by sufficient credible evidence. *See Blackmon*, 2019 WL 5092389, at *2. The Parole Board, relying on a panel's decision, noted its reasons for denying parole as follows:

> facts and circumstances of offense, specifically, Murder, first degree; committed to incarceration for multiple offenses; . . . institutional infractions are numerous, persistent and resulted in confinement in detention . . . . [petitioner] exhibit[s] insufficient problem resolution . . . moderate risk of recidivism.

ECF. No. 11-3 at 61. The Parole Board though did detail the panel's stated mitigation factors as well in arriving at its decision; they were: "no prior offense record, participation in programs

specific to behavior; participation in institutional programs; institutional reports reflect favorable institutional adjudgment; attempt made to enroll and participate in programs but was not admitted." *Id.* As to the 120-month FET, the Parole Board noted among other factors that "after three (3) decades of incarceration, you present as not having conducted a substantive introspection into the motivations or underlying reasons for your violent reactionary behavior and you have not made adequate progress in the rehabilitative process." *Id.* at 64.

The evidence in the record included the facts and circumstances of Petitioner's offenses; mentioned Petitioner's institutional infractions as well as found that Petitioner lacked insight into criminal behavior. The Parole Board's denial had "some basis," and was not conscience shocking. *Cf. Abdel-Aziz*, 2018 WL 4326401, at *5 (finding "some basis" for denial of parole where evidence included petitioner's prior criminal record, prior opportunities for parole failed to deter criminal behavior, technical prior parole violations, insufficient problem resolution including lack of insight into criminal behavior, minimizing conduct, and insufficient attempt to address substance abuse problem).

By way of example only, in Claim I, Petitioner argues that that the Parole Board's denial was retaliatory because he sought to appeal his sentence. Petitioner takes specific exception to a panel member asking him during his parole hearing why he was still filing briefs to get his sentence reduced. (*See* ECF 1-3 at 58). Taken in context, however, this question was part of a more general discussion inquiring into whether Petitioner would commit another crime if released on parole, and, whether, if successful on his appeals, Petitioner's consecutive aspect of his sentences would be removed. (*See id.* at 59-60). There is no indication in the Parole Board's decision that they denied Petitioner parole because he had previously appealed his sentence. Indeed, the record as

cited above indicates the Parole Board considered numerous relevant outlined factors (both negative and positive) in arriving at its parole denial decision.

Claim II (speculation by the Parole Board) and Claim IV (improper FET) essentially request this Court to "second guess" the decision of the Parole Board, something that is not within the purview of this Court on federal habeas review in analyzing whether Petitioner's substantive due process rights were violated. The record clearly illustrates that the Parole Board had "some basis" for denying Petitioner parole and instituting a 120-month FET. That is all that is required in determining that Petitioner's substantive due process rights were not violated by this parole denial. The parole denial and 120-month FET does not meet the high "shocks the conscience" bar in these circumstances.

Accordingly, Petitioner fails to show that his parole denial violated his substantive due process rights. Therefore, Petitioner is not entitled to federal habeas relief on Claims I, II and IV as he has not shown that the denial of his parole was contrary to, or an unreasonable application of clearly established federal law, or that the parole denial and subsequent affirmance in state court was based on an unreasonable determination of the facts. Thus, these claims are denied.

B. Claim III

In Claim III, Petitioner asserts that the state failed to protect his rights to a neutral and detached Parole Board. More specifically, Petitioner claims that the chairman of the New Jersey State Parole Board, Samuel J. Plumeri, Jr., participated in his parole proceedings despite having previously acted as the arresting detective in Petitioner's criminal case and after having testified at Petitioner's trial. The Appellate Division analyzed and denied this claim as follows:

> We find no merit in Blackmon's argument reversal is necessary because Board Chairman Samuel J. Plumeri, Jr. participated in or influenced the Board's decision despite a personal interest in the outcome of Blackmon's parole application. See N.J.A.C. 10A:71-

> 1.5(a) ("A Board member shall not participate in any Board or Board panel deliberations or disposition of any case in which the Board member has a personal interest, prejudice or bias.")[.] Blackmon's argument is based on the fact that prior to Plumeri's appointment to the Board, he was a detective with the Trenton Police Department and testified in that capacity at Blackmon's trial. A voting sheet in the record indicates Plumeri did not participate in making the decision to deny Blackmon's parole application or set his FET. Plumeri is designated on the voting sheet as "disqualified." Blackmon has produced no evidence to support his speculation that Plumeri influenced the Board's deliberations.
>
> Blackmon relies primarily on the fact that Plumeri's signature appears at the bottom of the final agency decision. The Board represented to the court that as a routine administrative practice, by virtue of his position as Chairman, Plumeri's name appears on all final decisions of the Board. We accept the Board's representation. We suggest, however, that the Board consider minimizing the potential for confusion in the future by having final agency decisions signed by a Board member acting as Chairman when Plumeri is disqualified because of his prior role as a law enforcement officer.

*Blackmon*, 2019 WL 5092389, at *3.

"[I]nmates are entitled to have their applications for parole considered by officials who are neutral, unbiased and disinterested." *Martinez v. Cal. Bd. of Parole Hearings*, No. 13-1349, 2014 WL 5419573, at *2 (C.D. Cal. Oct. 22, 2014) (citing *O'Bremski v. Maass*, 915 F.2d 418, 422 (9th Cir. 1990) (citing *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972)); *Venegas v. Davis*, No. 13-4233, 2013 WL 5434240, at *5 (C.D. Cal. Sept. 26, 2013)). The Appellate Division made a factual finding that Mr. Plumeri did not influence the Parole Board's decision. Indeed, as described by Appellate Division, a voting sheet by the full Parole Board indicated that Mr. Plumeri was disqualified and did not vote on the Parole Board's ultimate findings. *See* ECF No. 11-6 at 95. The Appellate Division also accepted the Parole Board's factual representation that Mr. Plumeri's signature at the end of the final agency decision was a routine administrative practice because his name appears on all final decisions of the Parole Board as its Chairman.

These factual findings by the Appellate Division are presumed to be correct and Petitioner has the burden to rebut these factual findings by the Appellate Division by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). Petitioner claims that Mr. Plumeri's signature at the end of the Parole Board's decision indicates that his involvement in his case was more than ministerial. However, his claim is nothing more than conjecture. At a minimum, given the voting sheet, without further evidence to the contrary, Petitioner fails to rebut the Appellate Division's factual finding that Mr. Plumeri did not influence the Parole Board's deliberations and decision by clear and convincing evidence. Accordingly, Petitioner fails to show that he is entitled to federal habeas relief on Claim III as well.

## V.    CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Applying this standard, the Court finds that a certificate of appealability shall not issue in this case.

## VI. CONCLUSION

For the foregoing reasons, Petitioner's habeas petition is denied. A certificate of appealability shall not issue. An appropriate Order will be entered.

DATED: March 25, 2024

ROBERT KIRSCH
United States District Judge